UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No.  HG 06-05402

REGENCY INTERNATIONAL FLOORING, LLC,

    Debtor.

_____/

JEFF A. MOYER,

    Plaintiff,

vs.

Adv. Pro. No.  08-80421

UNITED STATES OF AMERICA,
DEPARTMENT OF TREASURY and
INTERNAL REVENUE SERVICE,

    Defendants.

_____/

---

## NOT FOR PUBLICATION

---

**SUPPLEMENT TO SEPTEMBER 25, 2009 BENCH OPINION**

On September 25, 2009, this court rendered its bench opinion with respect to the claim made by Trustee in the above-captioned adversary proceeding.  The following supplements that bench opinion.

The court determined in its bench opinion that Regency International Flooring, Inc. ("Regency International") was insolvent at the time Regency International made the $82,722.00 transfer to Defendant.  As stated in the bench opinion, Regency International's balance sheet as of

April 30, 2006 indicated that it was insolvent[1] by over $450,000.00 unless startup costs associated with a new product line booked as capital expenditures had a fair valuation equal to or greater than that shortfall.

The new product line (the "Turion line") involved premium bamboo flooring. Attorneys fees associated with trademarking, marketing expenses, and costs associated with building floor displays and creating samples all had to be incurred before revenues from the line could be realized. One way of addressing these so-called startup costs would have been to simply expense them as incurred. However, a maxim of accounting is that expenses be matched as best as possible against the revenue realized from their incursion. Therefore, Regency International chose to "capitalize" these costs since it did not expect to begin realizing substantial revenues from its Turion line until big box retailers began placing orders in the first quarter of 2007.

"Turion Startup $550,025.88" is the entry on Regency International's April 30, 2006 balance sheet that represents these capitalized startup costs. Although not indicated at trial, it is fair to infer that Regency International intended to amortize these capitalized expenses against revenues as they began to be realized in 2007. Again, capitalizing these startup costs and then amortizing them against revenues realized in later years is consistent with the accounting goal of matching expenses with revenue so as to accurately reflect income earned.

The fact that these startup expenses were capitalized did not in and of itself make this "asset" valuable. Indeed, with perhaps the exception of the trademarks created, the efforts represented by the $550,000.00 in capitalized expenditures had no inherent value at all. Rather, the capitalized

---

[1]"Insolvent" means "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32).

2

expenses at best could be characterized as an investment by Regency International in what it hoped would be a future of significant profits realized from its successful launch of the new Turion line.

Investments, of course, can have value and in this instance Regency International's $550,000.00 investment in the new product line might have been viewed as valuable by a third party interested in purchasing Regency International. In other words, a prospective purchaser might have shared Regency International's optimism concerning the Turion line and, as a consequence, might have been willing to reimburse Regency International's efforts to make that line a success. "Might," though, is the operative word, for Regency International's prospects did not look at all good in April of 2006 notwithstanding Regency International's expectation that it would generate substantial revenue the next year through increased sales of its Turion line. Regency International's problem was that it was woefully undercapitalized in April of 2006 and, as such, it did not have the wherewithal to make it to 2007. Or, to put it metaphorically, Regency International might have wanted to hit it big in Vegas and Regency International might have even realized considerable success had it ever actually arrived. However, Regency International did not have enough money to purchase the airfare. Therefore, whatever else it had expended in preparation of the trip was for naught.

Mr. Oonk, Regency International's managing member, may not have recognized that his company was in such serious trouble in April of 2006. However, this court has no question that an outsider, in assessing Regency International's value, and especially the value of what Regency International had booked as the startup costs for the Turion line, would have realized it. Indeed, the fact that Regency International was not able to accumulate the remaining capital it needed, and, as a consequence, failed in the fall of 2006 notwithstanding its supposedly favorable prospects in 2007,

corroborates that the $550,000.00 "investment" Regency International had made in the Turion line was not a good one. Regency International's capital problems, as ultimately manifested by its closure only six months later, indicates that its solvency as a going concern was suspect, especially when a sixth of its assets consisted of only capitalized costs associated with a product line that was not projected to generate substantial revenues until months after Regency International's money had run out. Therefore, while Regency International's balance sheet may have reflected net member equity because of the $550,000.00 in startup costs Regency International had chosen to capitalize instead of expensing, the actual value of those startup costs was in reality nominal. As a consequence, Regency International was already insolvent when it transferred the $82,772.00 to Defendant in April 2006.

Honorable Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this  6th  day of November, 2009
at Grand Rapids, Michigan.